**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **GARY GRAY, *et al.*,** | * | |
| **Plaintiffs,** | * | |
| v. | * | **Civ. No. JKB-24-0897** |
| **THE PHILADELPHIA CONTRIBUTIONSHIP,** | * | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM**

Plaintiffs Gary and Lashonda Gray have brought this diversity action for breach of contract and failure to settle claims in good faith against their home insurance company, Defendant The Philadelphia Contributionship ("TPC").[1]  This lawsuit arises out of a dispute between Plaintiffs and TPC over the proper insurance payout associated with a 2021 storm that damaged Plaintiffs' residence in Upper Marlboro, Maryland. (Compl., ECF No. 1, at ¶¶ 7–16.)

Now pending before the Court is Plaintiffs' Motion to Compel Appraisal and Stay Litigation Pending Appraisal. (ECF No. 9.)  The Motion is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).  For the following reasons, the Motion will be granted, and this case will be stayed pending completion of appraisal.

**I.    Background**

On May 4, 2021, a "wind, hail, and flying debris" storm damaged Plaintiffs' home in Upper Marlboro. (Compl. ¶¶ 7, 10.)  Plaintiffs subsequently filed a claim for damage with TPC (the

---

[1] In the Complaint, Plaintiff erroneously named Defendant as "The Philadelphia Contributorship." (*See* ECF No. 1 at 1; ECF No. 3 at 1 & n.1 (Defendant clarifying that its name is "The Philadelphia Contributionship" and that Defendant was "incorrectly identifie[d]" in the Complaint).)  The Clerk will be directed to update the case caption to reflect the correct name for the Defendant.

"Claim"). (ECF No. 11-5 at 4.) The home was covered by an insurance policy that was effective from May 17, 2020, to May 17, 2021 (the "Policy"). (ECF No. 9-1 at 5.) The parties were unable to swiftly come to an agreement, and in December 2021, Plaintiffs retained a public adjuster, who estimated that Plaintiffs were owed approximately $160,000. (Compl. ¶¶ 14–15.) TPS agreed to pay approximately $40,000 of that amount. (*Id.* ¶ 16.) The amount in dispute is currently $120,158.35. (*Id.*)

In November 2022, Plaintiffs, through counsel, filed a complaint with the Maryland Insurance Administration ("MIA"), alleging that TPC underpaid the Claim. (ECF No. 11 at 4.) TPC filed a written response, and the MIA issued its ruling on February 1, 2023. (*Id.*) The MIA found that Plaintiffs established that TPC was obligated to cover the Claim under the terms of the Policy, but found that Plaintiffs failed to prove that they were owed any additional compensation or that TPC breached its obligations under the Policy. (ECF No. 11-5 at 11–12.)

Plaintiffs commenced the instant action on March 27, 2024. (ECF No. 1.) On April 29, 2024, Plaintiffs, through counsel, sent a letter to TPC, informing the company that they "disagree with the amount of loss [TPC] has calculated," and that, "[a]s a result of our inability to reach a mutually agreeable settlement, we are hereby invoking the appraisal clause of the policy." (ECF No. 9-2.) Plaintiffs selected an appraiser and requested that TPC inform them of TPC's choice of appraiser. (*Id.*) On May 20, 2024, TPC, through counsel, responded by letter, stating that "TPC must respectfully deny your request to invoke the appraisal clause of the applicable policy due to the passage of time between the date of loss and the date of the request." (ECF No. 9-3.)

The appraisal clause of the Policy provides as follows:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or

we may request that the choice be made by a judge of a court of record in the state
where the "residence premises" is located.  The appraisers will separately set the
amount of loss.  If the appraisers submit a written report of an agreement to us, the
amount agreed upon will be the amount of loss.  If they fail to agree, they will
submit their differences to the umpire.  A decision agreed to by any two will set the
amount of loss.
    Each party will:
    1. Pay its own appraiser; and
    2. Bear the other expenses of the appraisal and umpire equally.

(ECF No. 9-1 at 50.)[2]

    Plaintiff filed the instant Motion on July 16, 2024.  (ECF No. 9.)

## II.    Choice of Law

    A threshold question—which neither party has addressed—is the substantive law that this

Court must apply to decide the instant Motion.  As a general matter, "[a] federal court sitting in

diversity applies the substantive law of the state in which it sits."  *Megaro v. McCollum*, 66 F.4th

151, 159 n.4 (4th Cir. 2023) (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d

581, 599–600 (4th Cir. 2004)).  So here, Maryland law—and in particular its law governing the

enforcement of arbitration and appraisal clauses—would apply.  But there is a wrinkle in the form

of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which "generally preempts state laws

limiting the enforceability of arbitration agreements."  *Minnieland Priv. Day Sch., Inc. v. Applied

Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 453 (4th Cir. 2017).  However, if the state

law at issue *does* provide for the enforcement of arbitration agreements, then that state law controls

---

[2] The Policy actually contains two appraisal clauses, one in the main body of the agreement (ECF No. 9-1
at 41), and one in an Endorsement to the Policy entitled "Special Provisions—Maryland" (*id.* at 50).  The
latter provision (the one in the Endorsement) is the operative one, because the Endorsement contains a
header stating "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."
(*Id.*)  The two appraisal clauses are identical, with the exception of one difference in the second sentence
of the clause: the clause in the main body of the agreement refers to "a competent and impartial appraiser"
(ECF No. 9-1 at 41), whereas the clause in the Endorsement omits the words "and impartial" and simply
refers to "a competent appraiser" (*id.* at 50).  Whatever the significance of this change may be, it is not
material to the resolution of the instant Motion to Compel Appraisal.  No party has referenced the difference
between the two clauses, and there is no dispute as to the impartiality of any proposed appraiser.

3

in a diversity action, and the FAA has no preemptive effect. *See Palcko v. Airborne Express*, 372 F.3d 588, 595–96 (3d Cir. 2004) (holding that a district court erred in applying the FAA to an arbitration agreement, rather than the applicable state law on enforceability of arbitration agreements, and observing that the FAA does not preempt the entire field of arbitration).

Here, Plaintiff relies not on the FAA but on the Maryland Uniform Arbitration Act ("MUAA"), Md. Code Ann., Cts. & Jud. Proc. § 3-201 *et seq.* The MUAA provides that, as a general matter, "a written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy arising between the parties in the future is valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." *Id.* § 3-206(a). Because it provides for the enforcement of arbitration agreements, the MUAA controls in this action and is not preempted by the FAA.[3] *See New Hope Church of God Waldorf v. Bhd. Mut. Ins.*, Civ. No. MJM-23-2341, 2024 WL 3638031, at *1 n.1 (D. Md. Aug. 2, 2024) (applying the MUAA to a motion to compel appraisal and observing that "[n]either party contends that provisions of the MUAA that are relevant here are preempted by the FAA").

## III.    Legal Standard

Maryland law treats a motion to compel appraisal in the insurance context as analogous to a motion to compel arbitration, and consequently applies arbitration law to appraisal agreements. *Thompson v. Allstate Prop. & Cas. Ins. Co.*, Civ. No. 22-JMC-02379, 2024 WL 3161586, at *2 (D.

---

[3] The MUAA contains another provision—not cited by either party—which provides that "any provision in an insurance contract with a consumer that requires arbitration is void and unenforceable." Md. Code Ann., Cts. & Jud. Proc. § 3-206.1(b)(1). The Court need not determine whether this provision is preempted by the FAA, however, because the MUAA expressly states that "[t]his subsection does not apply to a provision that establishes an appraisal process to determine the value of property." *Id.* § 3-206.1(b)(2). Because the instant Motion involves an appraisal to determine the value of property, the MUAA's general prohibition on arbitration clauses in consumer insurance contracts is inapplicable. *See Thompson v. Allstate Prop. & Cas. Ins. Co.*, Civ. No. JMC-22-02379, 2024 WL 3161586, at *4 (D. Md. June 25, 2024).

Md. June 25, 2024) (citing *Brethren Mut. Ins. Co. v. Filsinger*, 458 A.2d 880, 882–83 (Md. Ct. Spec. App. 1983) and *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d 14, 20 (Md. 1982)).

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012) (alteration in original) (quotation omitted). If the Court need not refer to evidence beyond the pleadings and documents integral to the pleadings, then the Court should analyze such a motion under the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id.* at 477–78. But, when the Court considers evidence outside those categories, the Court must analyze the motion under the Rule 56 standard for summary judgment. *Id.*

Here, the Court will consider as evidence not only the Policy itself (which is integral to the Complaint), but also communications between the parties regarding their dispute over appraisal. Accordingly, the Court will evaluate the instant Motion under the Rule 56 standard.

Under Rule 56, a party seeking summary judgment must show that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmovant, but the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The Court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

IV.    **Discussion**

Here, the parties do not dispute that the Policy's appraisal clause is valid, enforceable, and facially applicable to the situation at hand. However, TPC resists appraisal on three grounds: first,

5

that invoking appraisal was a condition precedent to filing suit, and that this action is therefore barred because Plaintiffs failed to invoke appraisal before filing their Complaint (ECF No. 11 at 5–6); second, that Plaintiffs waived their right to appraisal by sitting on the right for several years before choosing to invoke it (*id.* at 7–8); and third, that appraisal is inappropriate because Plaintiffs are seeking to use appraisal to obtain coverage beyond the amount to which they are entitled under the terms of the policy (*id.* at 8–9). The Court will address each of these arguments in turn.

### A. *Whether Plaintiffs' Suit is Barred by a Condition Precedent*

Turning first to the condition precedent argument, the Policy contains a provision, entitled "Suit Against Us," which provides: "No action can be brought against us [*i.e.*, TPC] unless there has been full compliance with all of the terms under Section I of this policy and the action is started within three years from the date it accrues."[4]  (ECF No. 9-1 at 51.)  As TPC correctly observes, the Court of Appeals of Maryland (now the Supreme Court of Maryland) has held, in interpreting a similar insurance appraisal clause, that "a determination by the appraisers of the amount of the loss is a condition precedent to a suit on the policy by the insured." *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 445 A.2d 14, 16 (Md. 1982).  However, under Maryland law, a party to a contract may waive a condition precedent by taking actions that are inconsistent with an intent to rely on the protections of that condition precedent. *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 25 A.3d 967, 983–85 (Md. 2011).

The question of waiver is ordinarily a fact-intensive inquiry and is rarely appropriately resolved before trial. *Id.* at 984.  But here, TPC could not have been more clear that it was waiving its right to insist on the condition precedent when it expressly refused Plaintiffs' request to engage

---

[4] This provision is in an Endorsement that amends the "Suit Against Us" provision in the underlying Policy; the only difference is that the operative version in the Endorsement permits a suit to be filed within three years of the accrual of the cause of action, as opposed to two years in the original "Suit Against Us" clause. (*Compare* ECF No. 9-1 at 41 *with id.* at 51.)

in appraisal. (*See* ECF No. 9-3 (May 20, 2024, letter from TPC's counsel to Plaintiffs' counsel stating that TPC "must respectfully deny [Plaintiffs'] request to invoke the appraisal clause of the applicable policy due to the passage of time between the date of loss and the date of the request").) TPC cannot seriously expect this Court to go along with its attempt to refuse to participate in appraisal, only to then turn around and say this action is barred because there has been no appraisal. TPC cannot have it both ways. Thus, the Court finds that TPC waived the condition precedent, and that the "Suit Against Us" clause does not bar this action.

## B. *Whether Plaintiffs Waived Their Right to Appraisal*

The Court next considers TPC's argument that Plaintiffs waived their right to appraisal by waiting several years, and then filing this action, before invoking it. "In insurance law, waiver requires an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish." *Creveling v. Gov't Emps. Ins. Co.*, 828 A.2d 229, 243 (Md. 2003) (quotation omitted). The Fourth Circuit has articulated how the waiver doctrine operates in the context of motions to compel arbitration—which, as discussed above, are treated in Maryland as analogous to motions to compel appraisal:

> A party may waive its right to insist on arbitration if the party so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay. But even in cases where the party seeking arbitration has invoked the litigation machinery to some degree, the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*. Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice.

*MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (cleaned up; emphasis in original). The party resisting appraisal "bears the heavy burden of proving waiver." *Id.*

7

TPC argues that "the Grays' delay of almost three years from the date of loss, and more than two years after they and TPC failed to agree on the amount of loss, has caused actual prejudice to TPC." (ECF No. 11 at 8.) According to TPC, "[d]ue to the passage of time, and the numerous weather events that have occurred in the interim, there is no way that any appraiser could conduct an independent investigation of the Property to determine the correct amount of the loss." (*Id.*) Instead, TPC predicts that "the appraisers would be forced to rely on the photographs and estimates already completed by the parties, and which are the source of the dispute. This is likely to result in some sort of compromise instead of a true setting of the amount of the loss, as contemplated by the appraisal provision in the Policy." (*Id.*)

TPC has not carried its burden of showing that Plaintiffs waived their right to seek appraisal. It is true that Plaintiffs waited nearly three years—from May 2021, when the loss occurred, to April 2024—to invoke appraisal, and TPC's frustration with the delay is understandable. However, the parties were actively attempting to resolve the dispute for the first two years, first through the use of a public adjuster, and then through proceedings before the MIA. The roughly yearlong delay between the MIA's decision and the filing of the suit is a bit more problematic, but the Policy contains no time limit on when to invoke the Appraisal right, and the "Suit Against Us" provision permits lawsuits to be filed up to three years after the claim accrues. Delay, and even the filing of a lawsuit, does not constitute waiver unless the opposing party can demonstrate actual prejudice. *MicroStrategy*, 268 F.3d at 249. Here, this action is still in its early stages—there has been no discovery, and no briefing beyond the instant Motion. As to TPC's argument that an appraiser could not accurately determine the amount of loss given the amount of time that has past, this is at bottom no more than an argument that the loss is unknowable. To be sure, any estimate of the damage might necessarily be somewhat inexact at this point. But TPC

does not contend that the damage was particularly complex or unusual, nor does it explain why this Court would do a better job of determining the loss than the appraisers would. In any event, the appraisal process set forth in the Policy—which TPC agreed to and, presumably, drafted—provides for a seemingly fair process in which each side chooses a competent arbitrator, and then the arbitrators choose a mutually agreeable umpire to set the amount of loss in the event that they are unable to come to an agreement. (*See* ECF No. 9-1 at 50.)

Another court in this district recently considered an almost identical factual scenario, in which a plaintiff sought to compel appraisal under the terms of the insurance policy only after first initiating proceedings before the MIA and then filing suit in federal court. *Thompson v. Allstate Prop. & Cas. Ins. Co.*, Civ. No. JMC-22-02379, 2024 WL 3161586, at *1, 5 (D. Md. June 25, 2024). Magistrate Judge Coulson's reasoning in that case applies equally here:

> Here, Defendant's argument hinges on the fact that Plaintiff has already commenced administrative proceedings and the present lawsuit in connection with his claims, as well as Plaintiff's alleged delay in enforcing the appraisal clause. But as *MicroStrategy* and its progeny explain, such filing of pleadings and delay, without a further showing of actual prejudice, is insufficient to deny an insured their right to invoke an appraisal provision in contexts like this. Without a stronger showing of actual prejudice by Defendant, . . . the Court declines to conclude at this stage that Plaintiff waived his right to compel appraisal.

*Id.* at 5 (citation omitted). Like in *Thompson*, nothing in Plaintiffs' actions to date have evinced an intent to relinquish their right to appraisal, nor has TPC shown that Plaintiffs have caused actual prejudice. Accordingly, the Court does not find that Plaintiffs have waived their right to appraisal.

## C. *Whether Plaintiffs are Improperly Using Appraisal to Obtain Additional Coverage*

Finally, TPC raises the concern that Plaintiffs intend to seek to recover, in the appraisal process, a payment for the public adjuster's fee, which TPC argues is not a category of loss covered under the Policy. (ECF No. 11 at 8–9.) TPC is correct that appraisal is not appropriate "when the parties' dispute centers on whether the insured is entitled to coverage at all, rather than the exact

value of loss that the parties agree is covered." *New Hope Church of God Waldorf v. Bhd. Mut. Ins.*, Civ. No. MJM-23-2341, 2024 WL 3638031, at *2 (D. Md. Aug. 2, 2024). However, the fact that the parties disagree over one (fairly small) category of coverage does not mean that appraisal must be thrown out altogether. Instead, the Court will adopt the procedure implemented by Judge Coulson in the *Thompson* case, which strikes the Court as eminently pragmatic:

> [T]he Court will grant Plaintiff's motion and compel the parties to engage in the appraisal process to better determine the precise value of loss to Plaintiff's residence resulting from a covered peril. However, the Court will also require the appraisers to itemize their damage reports such that Defendant will be able to contest whether any particular damages are excluded from the Policy's coverage. This solution recognizes Plaintiff's contractual right to invoke appraisal under the Policy, preserves Defendant's ability to contest the scope of covered losses under the Policy following that appraisal, and accords with the Court's general sentiment of encouraging alternate dispute resolution methods for the sake of efficiency and judicial economy.

*Thompson*, 2024 WL 3161586, at *6. The Court's order will reflect this procedure, which will ensure that the appraisal process may promptly begin while preserving TPC's right to contest, after appraisal, whether certain categories of loss were covered by the Policy.

## V.     Conclusion

For the foregoing reasons, a separate order will issue that will: (1) direct the Clerk to update the case caption to reflect TPC's correct name; (2) grant Plaintiffs' Motion to Compel Appraisal, subject to the procedure for itemizing damages described above; and (3) stay this case pending the completion of appraisal.


DATED this _12_ day of September, 2024.

BY THE COURT:

James K. Bredar
United States District Judge